## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON

**MATTHEW STUART WADE,**

      **Plaintiff,**

**v.**                                 **Case No. 2:13-cv-12817**

**DAVID BALLARD, Warden,**
**Mount Olive Correctional Complex,**

      **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court is the plaintiff's Complaint (ECF No. 9) and his Application to Proceed Without Prepayment of Fees and Costs (ECF No. 7). This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

### PROCEDURAL HISTORY

On May 30, 2013, the plaintiff filed a letter-form Complaint, with attachments, complaining about problems with sending and receiving both legal and non-legal mail, and further alleging that Warden David Ballard deliberately refused to forward a grievance concerning his mail issues to the Commissioner of Corrections. On June 17, 2013, the Clerk received and docketed another letter from the plaintiff discussing the grievance appeal process and details about staff refusing to respond to his inmate request forms and other alleged "retaliation." (ECF No. 3). The plaintiff also attached as exhibits

his grievance forms and a hand-written summary of the American Correctional Association Standards concerning inmate mail procedures. (ECF No. 3).

The standard forms for filing a Complaint under 42 U.S.C. § 1983 were mailed to the plaintiff on July 3, 2013. On July 18, 2013, the plaintiff filed an Application to Proceed Without Prepayment of Fees and Costs (ECF No. 7), an Authorization to Release Institutional Account Information (ECF No. 8) and a form Complaint, with exhibits (ECF No. 9). The form Complaint is the document upon which this matter is now proceeding. Although the Complaint contains certain attachments that reference the plaintiff's problems with sending and receiving mail, and includes correspondence to other entities trying to obtain information about what had occurred with his mail, the sole issue raised in the Complaint document (ECF No. 9) is defendant Ballard's alleged refusal to mail the plaintiff's grievance to the Commissioner.

On August 13, 2013, the Clerk received another letter from the plaintiff in support of his Complaint, which was construed as a Motion for a Temporary Restraining Order/Preliminary Injunction (hereinafter "the TRO Motion") (ECF No. 11). The TRO Motion was denied in light of the plaintiff's transfer from the Mount Olive Correctional Complex ("MOCC").[1] The undersigned's prior Proposed Findings and Recommendation to deny the TRO Motion suggested that an initial status conference might be held thereafter. However, in light of the determination on initial screening that the plaintiff's Complaint should not proceed, no such status conference was held.

---

[1]   The plaintiff was transferred to the Huttonsville Correctional Center on or about February 20, 2014, and was subsequently released on parole on or about February 9, 2016. The plaintiff has failed to keep the Court informed of his contact information as required by Local Rule 83.5 of the Local Rules of Civil Procedure for the United States District Court for the Southern District of West Virginia. However, the undersigned's staff contacted the Records Department at the West Virginia Division of Corrections Central Office and determined that the plaintiff is presently incarcerated on new charges at the Southern Regional Jail and that he has a new inmate number (OID # 3451992). **The Clerk is DIRECTED to modify the docket sheet to reflect the plaintiff's current address**.

## **STANDARD OF REVIEW**

Pursuant to the provisions of 28 U.S.C. § 1915A, the court is obliged to screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On review, the court must dismiss the case if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. This screening is generally done prior to consideration of an Application to Proceed without Prepayment of Fees and Costs, and notwithstanding the payment of any filing fee. A "frivolous" case has been defined as one which is based on an indisputably meritless legal theory. *Denton v. Hernandez*, 504 U.S. 25 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, in *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted).  Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.*, at 556.

\* \* \*

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.  Because service of process has not occurred, a motion to dismiss has not been filed in this case.  However, the standard set forth in 28 U.S.C. § 1915A is analogous to that of a motion filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for dismissal based upon the failure of the Complaint to state a claim upon which relief can be granted.

## THE PLAINTIFF'S ALLEGATIONS

### *The plaintiff's Complaint*

The plaintiff's Complaint states as follows:

Defendant:  Ballard.  Warden of the Mt. Olive Correctional Complex.  Refused to forward the Plaintiff Wade's inmate grievance to the Commissioner of Corrections for the due process appeal on May 2, 2013.  Plaintiff submitted the true facts on the inmate grievance.

(ECF No. 9 at 4).  The Complaint form requests the following relief:

Wherefore:  Plaintiff respectfully pray[s] that the court enter Judgment:

1.      Granting Plaintiff a declaration that the acts and omissions described herein violated (his) the Plaintiff rights under the Constitution of the United States;

2.    A preliminary and permanent injunction ordering the defendant and his prison officials, corrections officers of all ranks to cease (stop) their retaliating abuse of authority against the Plaintiff;

3.    Grant Plaintiff compensatory damages for intentional infliction of emotional distress personally caused by the defendant in the amount of 6000 dollars against the defendant;

4.    Plaintiff also seeks to be transferred to a safe (DOC) facility for his safety, closer to his family in Greenbrier Co.  Plaintiff is not safe at Mt. Olive Correctional Complex.

5.    Plaintiff also seeks recovery of his costs in this suit in the amount of $500 dollars.

6.    Any additional relief the court deems just, proper and equitable.

(*Id.* at 5-7).

Attached to the plaintiff's Complaint is the plaintiff's correspondence with the United States Postal Inspection Service detailing the fact that the plaintiff had one piece of "legal mail" (consisting of legal research sent from the Supreme Court of West Virginia's Law Library) that was apparently opened prior to his receipt of the same.  The plaintiff's letter contends that prison policy requires that legal mail must be opened in the presence of the prisoner to whom it is addressed.  The letter further discusses several pieces of personal mail that the plaintiff had attempted to exchange with family members which were apparently returned to the senders as undeliverable during the time period of April 6, 2013 to May 15, 2013.  (ECF No. 9, Ex. 3).  The documentation attached to the plaintiff's Complaint further indicates that the plaintiff was under no mail restrictions.  (*Id.*, Ex. 7).  The plaintiff also attached a copy of West Virginia Code § 25-1-8 concerning the procedures for monitoring of inmate mail.  (*Id.*, Ex. 5).

## ANALYSIS

The plaintiff's Complaint focuses on defendant Ballard's refusal to forward a grievance to the Commissioner of Corrections on or about May 2, 2013. (ECF No. 9 at 4). As relief, the plaintiff seeks a declaration that the acts and omissions of defendant Ballard violated his unspecified constitutional rights, and he also seeks a preliminary and permanent injunction ordering the defendant and his subordinates to "cease (stop) retaliating abuse of authority against the plaintiff." (*Id.* at 6). However, the Complaint document itself does not articulate the form of retaliation allegedly being done to the plaintiff.

Construing the *pro* se Complaint liberally, as the court must, it would appear that the plaintiff is alleging two forms of retaliation: one, that defendant Ballard himself refused to mail the plaintiff's grievance document to the Commissioner of Corrections, so that the plaintiff could exhaust the grievance process; and, two, that Ballard or his unidentified subordinates at MOCC have tampered with or refused to mail the plaintiff's legal and non-legal mail.

### A.   The plaintiff's requests for declaratory and injunctive relief are moot.

In light of the plaintiff's transfer to the Huttonsville Correctional Center, and subsequent release from custody, all of his claims for declaratory and injunctive relief are now moot. The power of the federal courts to adjudicate claims turns on the existence of a case or controversy. U.S. Const., art. III, § 2; *Daimler-Chrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). "When a case or controversy ceases to exist because the issue is no longer live or a party 'lack[s] a legally cognizable interest in the outcome[,]' preventing the court from granting effective relief, the claim becomes moot, and the court lacks the constitutional authority to adjudicate the issue." *Taylor v. Riverside Reg'l Jail Authority*,

2011 WL 6024499 *4 (E.D. Va., Dec. 2, 2011) (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969) and *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).

As noted in *Taylor*, well-established Fourth Circuit precedent has recognized that "the transfer or release of an inmate from the facility where he suffered the challenged conditions 'moots his claims for injunctive and declaratory relief' pertaining to his imprisonment." 2011 WL 6024499 at *4; *see also Rendellman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) ("as a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there.")

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that all of the plaintiff's claims for declaratory and injunctive relief contained in his Complaint (ECF No. 9) are moot and should be denied on that basis.

    **B.**   **The plaintiff's claim that Ballard refused to mail his grievance.**

Upon initial screening of the plaintiff's Complaint, the undersigned proposes that the presiding District Judge **FIND** that the Complaint is frivolous and fails to state a claim upon which relief can be granted, to the extent that the plaintiff has alleged that defendant Ballard retaliated against him by refusing to mail his grievance document to the Commissioner of Corrections.[2]

Retaliation claims are analyzed under the First Amendment. The elements of a retaliation claim are: (1) that the plaintiff engaged in protected activity; (2) that an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in the conduct; and (3) that the adverse action was motivated, at

---

[2] The undersigned notes that, pursuant to West Virginia Policy Directive 335.00(V)(D), concerning Inmate Grievance Procedures, the inmate himself is responsible for submitting a grievance appeal to the Commissioner of the Division of Corrections within five (5) days after he receives the Warden's response, or after the time for such response has passed.

least in part, by the plaintiff's protected conduct.  *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977).

Under *Mt. Healthy* and its progeny, an otherwise legitimate and constitutional government act can become unconstitutional when an individual demonstrates that it was undertaken in retaliation for his exercise of First Amendment speech. [Footnote omitted]. This doctrine demonstrates that, at least, where the First Amendment is concerned, the motives of government officials are indeed relevant, if not dispositive, when an individual's exercise of speech precedes government action affecting that individual. [Footnote omitted].  *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997).  However, the plaintiff must establish "either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).

There is no constitutional right to grieve.  As the Fourth Circuit wrote in *Adams:*

> [C]laims of retaliatory actions are legally frivolous unless the complaint implicates some right that exists under the Constitution.  That is, plaintiffs must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right.  A claim of retaliation that fails to implicate any constitutional right "lacks even an arguable basis in law," [*Neitzke v. Williams*, 490 U.S. 319,] 328, 109 S. Ct. [1827], 1833 [(1989)], and is properly subject to dismissal under § 1915(d).

> * * *

> As other circuits have recognized, there is no constitutional right to participate in grievance proceedings.  *See, e.g., Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991).

> * * *

> Contrary to appellant's suggestion, the Constitution does not guarantee him [access to the grievance process].  * * * [T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state.  *Flick*, 932 F.2d at 729; *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1998).

40 F.3d at 74-75.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's claim that defendant Ballard retaliated against him by refusing to mail his grievance to the Commissioner is legally frivolous because the plaintiff has no constitutionally protected right to participate in the grievance process.

### C. The plaintiff's retaliation claims concerning mail-tampering.

The plaintiff's claims concerning alleged tampering with his mail is a separate issue which is not addressed in the body of his Complaint (ECF No. 9). Nevertheless, in light of the liberal construction afforded to *pro se* filings, *see Haines v. Kerner*, 404 U.S. at 520-21, the undersigned will address the plausibility of such claims as addressed in the plaintiff's Complaint documents.

A prisoner's rights concerning inmate mail are governed by the First Amendment and the restriction of the same may be justified in furtherance of substantial governmental interests of security, order or rehabilitation, and giving appropriate deference to the decisions of prison administrators. *See Procunier v. Martinez*, 416 U.S. 396, 413-414 n.14 (1974), *overruled on other grounds, Thornburgh v. Abbott*, 490 U.S. 401, 404 (1989). "In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (citing *Thornburgh*, 490 U.S. at 413). Furthermore, courts have previously held that isolated incidents of mail tampering are usually insufficient to establish a constitutional violation. Rather, an inmate must show that prison officials "regularly and unjustifiably interfered with" his or her mail. *See, e.g., Buie v. Jones*, 717 F.2d 925, 926 (4th Cir. 1983); *Gardner v. Howard*, 109 F.3d 427, 431

(8th Cir. 1997); *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990); *Morgan v. Montanye*, 516 F.2d 1367, 1371 (2d Cir. 1975).

Although the plaintiff has not provided any specific prison policy directives concerning the processing of inmate mail at the Mount Olive Correctional Complex ("MOCC"),[3] he has provided the section of the West Virginia Code governing the monitoring of inmate mail in West Virginia state prisons.  In pertinent part, W. Va. Code § 25-1-18 provides:

> (a)  The commissioner of corrections or his or her designee is authorized to monitor, open, review, copy, and disclose mail to adult inmates of state correctional institutions in accordance with the following provisions:
>
> (1)  All adult inmates of state correctional institutions shall be notified in writing that their mail may be monitored, opened, reviewed, copied and disclosed;
>
> (2)  Only the commissioner or his or her designee shall have access to copies of inmates' mail unless disclosed pursuant to subdivision (4) of this subsection [which concerns disclosure to law enforcement authorities, which is not relevant herein].
>
> * * *
>
> (6)  The inmate whose mail has been copied and disclosed under this section shall be given a copy of all such mail.
>
> * * *
>
> (c)  All inmate's outgoing mail must be clearly identified as being sent from an inmate at a state correctional institution and must include on the face of

---

[3] The undersigned was able to locate an electronic copy of the Inmate Handbook for Mount Olive Correctional Complex, Revised 01May 2013, which provides the following notice concerning the monitoring of inmate mail:

> Inmate mail, except that protected by attorney-client privilege, is subject to being monitored, opened, reviewed and disclosed in accordance with the provisions of WV Code § 25-1-18.  All mail and packages are searched for contraband prior to being delivered.  Attorney-client mail is opened in the inmate's presence and searched for contraband prior to being delivered.  Complete procedures for inmate mail services are outlined within WVDOC Policy Directives #503.00 "Mail Privileges for Inmates" and #503.03 "Incoming Publications."

*West Virginia Division of Corrections Mount Olive Correctional Complex Inmate Handbook*, Revised 01 May 2013, at 9.  The undersigned was unable to locate a publically-available current electronic version of the two policy directives mentioned therein.

the envelope the name and full address of the institution.

(d)  The commissioner of corrections or his or her designee is authorized to open, monitor, review, copy and disclose an inmate's outgoing mail in accordance with the following provisions:

(1)  The inmate has previously sent mail that was threatening to the recipient or that would facilitate physical violence or other criminal activity; and

(2)  Such correspondence has come to the attention of the commissioner of corrections or the warden or administrator of the correctional institution.

(ECF No. 9, Attach. 5).

The plaintiff's documents allege problems with both his legal and non-legal mail. Intentional delay or non-delivery of legal mail may support a claim under the First Amendment.  However, negligent interference with an inmate's legal mail or access to the courts does not state a claim thereunder.  *See White v. White*, 886 F.2d 721, 724 (4th Cir. 1989); *Pink v. Lester*, 52 F.3d 73, 75-76 (4th Cir. 1995).

Concerning the plaintiff's legal mail, the plaintiff's documents allege that a package of legal research from the Supreme Court of Appeals of West Virginia (the "SCAWV") Law Library had been opened outside of his presence but was subsequently delivered to him. However, the opening of inmate mail, standing alone, does not state a cognizable constitutional claim.  *See, e.g., Brewer v. Wilkinson*, 3 F.3d 1235, 1244 (5th Cir. 1993).[4]

The plaintiff's prior TRO Motion, which was denied as moot due to his transfer from MOCC, further alleges that he gave a package of documents consisting of a 10-page response and 67 exhibits to his counselor, Mr. Coleman, to be mailed to the SCAWV prior to his deadline for filing a response in a state habeas appeal pending before the Court. The plaintiff contends that the response documents were never received by the SCAWV.

---

[4] The plaintiff does not allege that this package of legal research was from his attorney or was in any way protected by the attorney-client privilege or was any other type of privileged mail such that it would be subject to the policy that it must be opened in the presence of the inmate, as addressed in the Inmate Handbook discussed in footnote 3 above.

11

However, the plaintiff's TRO Motion does not indicate whether the plaintiff has suffered any adverse consequence, such as dismissal or denial of his habeas appeal, as a result of this document allegedly having not been received.

An inmate has a constitutional right of access to the courts under the First Amendment. However, in order to state a claim that the right of access to the courts has been violated, an inmate must show actual injury resulting from the conduct that the inmate alleges denied him such access. Accordingly, in the instant case, the plaintiff must be able to show that he suffered an actual injury from the alleged non-delivery of his habeas appeal response, before he could successfully assert a First Amendment claim on that basis.

Thus, even if the plaintiff could show that Mr. Coleman (who is not a defendant in the instant case) or any other staff member at MOCC had tampered with, delayed or failed to deliver the plaintiff's legal documents into the custody of the United States Postal Service, and that such action was for a retaliatory purpose, the plaintiff still could not succeed with a First Amendment claim, unless and until he could show actual injury therefrom. *See also Hudspeth v. Figgins*, 584 F.2d 1345, 1348 (4th Cir. 1978); *American Civil Liberties Union v. Wicomico County*, 999 F.2d 780, 785 (4th Cir. 1993).

Moreover, the plaintiff's Complaint documents appear to address isolated incidents of delayed delivery or non-delivery of the plaintiff's non-legal mail and do not allege any specific conduct by defendant David Ballard related thereto. Because the Complaint (ECF No. 9) does not sufficiently allege that the plaintiff has suffered any actual injury resulting from alleged retaliation or tampering with his mail by defendant David Ballard, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint (ECF No. 9) fails to state a claim upon which relief can be granted.

12

## **RECOMMENDATION**

For the reasons stated herein, it is respectfully **RECOMMENDED** that, pursuant to 28 U.S.C. § 1915A, the presiding District Judge **DISMISS** the plaintiff's Complaint (ECF No. 9) as being frivolous and for failure to state a claim upon which relief can be granted, and **DENY** his Application to Proceed Without Prepayment of Fees and Costs (ECF No. 7), but waive the payment of any filing fee.

The plaintiff is notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to Judge Copenhaver.

The Clerk is directed to file this "Proposed Findings and Recommendation" and to **mail a copy of the same to the plaintiff, Matthew S. Wade, OID #3451992, at the Southern Regional Jail**.

June 16, 2016

Dwane L. Tinsley
United States Magistrate Judge